# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 22, 2013

No. 12-60017
Summary Calendar

Lyle W. Cayce
Clerk

LORETTA BENNETT,

Plaintiff-Appellant

v.

THE GEO GROUP, INCORPORATED, doing business as East Mississippi
Correctional Facility,

Defendant-Appellee

_____

Consolidated w/ 12-60348

LORETTA BENNETT,

Plaintiff-Appellee

v.

THE GEO GROUP, INCORPORATED, doing business as East Mississippi
Correctional Facility,

Defendant-Appellant

Appeals from the United States District Court
for the Southern District of Mississippi
4:10-CV-133

Before KING, CLEMENT, and HIGGINSON, Circuit Judges.

No. 12-60017

PER CURIAM:[*]

Plaintiff Loretta Bennett appeals from a grant of summary judgment for Defendant The GEO Group, Inc., as to her federal employment discrimination claims and her state law claim for negligent infliction of emotional distress. Bennett argues that the district court erred in striking portions of her affidavit in opposition to summary judgment, and in striking all documentary exhibits attached to her response to summary judgment. Bennett argues that as a result of these evidentiary decisions, the district court erred in granting summary judgment for The GEO Group. The GEO Group cross-appeals, arguing that we should dismiss this appeal as untimely. Although Bennett failed to timely file her appeal, the district court extended the deadline to do so based on its finding that the delay was due to "excusable neglect." We hold that the district court did not abuse its discretion in extending the deadline to file an appeal, and that its evidentiary decisions and the grant of summary judgment were proper.

## I. BACKGROUND

Plaintiff Loretta Bennett (Bennett) was employed with The GEO Group, Inc. (GEO) from April 2005 to July 2007. Although the parties offer differing accounts of Bennett's tenure at GEO in their briefs, the summary judgment record shows that in early 2006, GEO raised concerns about her conduct and attitude, and on September 22, 2006, it provided Bennett with a letter of instruction because she had acted insubordinately. A month after Bennett received this letter, she filed a charge of discrimination based on race and disability with the Equal Employment Opportunity Commission (EEOC). On April 4, 2007, the EEOC dismissed Bennett's charge of discrimination, and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60017

issued her a right-to-sue letter, which provided a ninety-day window in which Bennett could file suit based on the charges alleged. Bennett did not sue.

Starting in January 2007, Bennett was involved in various incidents at work that resulted in GEO taking disciplinary action against her. On April 3, 2007, Bennett filed an employee complaint with GEO claiming that a pair of reports alleging that she acted with racial bias towards her coworkers were efforts by Unit Administration to harass, intimidate, and discriminate against her. In response to the complaint, GEO sent a warden from another of its facilities to investigate her allegations. Based on this investigation, GEO found that Bennett's allegations were unfounded, and that there were problems with Bennett's work conduct, which included verbal abuse of her coworkers, open defiance, and efforts to disrupt unit operations. Following this investigation, Bennett was terminated from GEO, effective July 10, 2007.

On September 20, 2007, Bennett filed a second charge of discrimination with the EEOC, alleging that she was terminated in retaliation for filing a previous charge of discrimination and was subjected to unwanted sexual advances. Following an investigation, the EEOC dismissed this charge, having found no illegal harassment or discrimination by GEO. The EEOC sent a right-to-sue letter and notice of dismissal to Bennett on November 26, 2008.

On May 3, 2010, Bennett filed a complaint in state court, which was removed to federal district court. In her complaint, Bennett asserted claims of race-based discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1981. She also asserted a claim under state law for negligent infliction of emotional distress. Despite being represented by counsel, Bennett did not participate in discovery, failing to answer interrogatories and respond to document production requests within the discovery period. GEO filed a motion for summary judgment to which Bennett did not timely respond. Two months

3

No. 12-60017

later, the district court *sua sponte* granted Bennett an extension of time to prepare and file a response to the motion for summary judgment.

Bennett filed her response in opposition to the motion for summary judgment two days after the extended deadline. She attached to her response sixty pages of documentation that had never been disclosed in accordance with federal and local discovery rules or in response to GEO's written requests. GEO moved to strike Bennett's declaration on the basis that it was a collection of hearsay, and conclusory and self-serving allegations, along with references to previously undisclosed and unauthenticated documents. GEO also moved to strike exhibits "B" through "W" because they had never been disclosed during the discovery period. After a pre-trial conference at which the district court entertained oral arguments from both parties, the court granted in part and denied in part GEO's motion to strike Bennett's declaration, granted GEO's motion to strike exhibits "B" through "W", and granted GEO's motion for summary judgment. The district court entered its judgment on November 22, 2011. Bennett failed to file a notice of appeal within the thirty-day period prescribed by Federal Rule of Appellate Procedure 4(a)(1).

On January 10, 2012, Bennett filed a notice of appeal with this court. In her notice of appeal, Bennett asserted that her case was dismissed without her knowledge, and claimed that she had not heard from her attorney since its dismissal. Because Bennett filed her notice of appeal after the Rule 4(a)(1) deadline, the district court allowed her to file a statement explaining why the court should find excusable neglect or good cause to extend the deadline. Bennett responded that her attorney misrepresented her and was paid off by GEO to sabotage her case. Bennett further indicated that her attorney did not reply to her inquiries or inform her that her case had been dismissed. Rather, Bennett claimed that she learned of the dismissal of her case two weeks after it was entered, and contacted the court about filing an appeal on her own.

No. 12-60017

On April 19, 2012, the district court concluded that Bennett had shown excusable neglect, and therefore allowed her to proceed with her appeal. GEO filed a notice of appeal to challenge this ruling.

## II. DISCUSSION

### A.     Excusable Neglect

We review a ruling on a Rule 4(a)(5) motion based on a determination of excusable neglect for an abuse of discretion. *See Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 820 (5th Cir. 2007). We grant more leeway to a district court's determination of excusable neglect when the district court grants the motion for an extension of time. *See Midwest Emp'rs Cas. Co. v. Williams*, 161 F.3d 877, 879 (5th Cir. 1998). In assessing excusable neglect under Rule 4(a)(5), we use an equitable standard, "taking account all of the relevant circumstances surrounding the party's omission," including "the danger of prejudice," "the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Applying this standard, the district court determined that the late filing of Bennett's notice of appeal was due to excusable neglect. The district court based its judgment on several findings related to the *Pioneer* standard, which included: (1) Bennett called the clerk of court upon learning that her case had been dismissed, "evinc[ing] a prompt desire to prosecute her case"; (2) Bennett mailed her notice of appeal on the thirty-second day after she learned that her case had been dismissed; (3) the delay was "relatively brief"; (4) there was no evidence that Bennett acted in bad faith; and (5) there was no evidence that GEO would suffer prejudice. The district court held that these facts, taken together, were sufficient to find excusable neglect.

No. 12-60017

The district court may have erred in not attributing to Bennett the fault of her attorney. Nevertheless, its decision to extend the filing deadline was not an abuse of discretion. Several cases where an untimely filing resulted from counsel's ignorance or neglect support this conclusion. For example, in *Stotter*, 508 F.3d 812, the plaintiff's counsel accidentally entered the incorrect year into her calendar, which resulted in an untimely filing. *Id.* at 820. We determined that the attorney's error, weighed against the other relevant factors, constituted excusable neglect. *Id.* In *Pioneer*, a bankruptcy case, the Supreme Court held that the respondents' counsel's failure to comply with the bar date was due to the unusual and ambiguous notice of that date, and therefore, all things considered, was excusable neglect. 507 U.S. at 398-99. *Stotter* and *Pioneer* demonstrate that where attorneys fail to file in a timely fashion because of "inadvertence, mistake, or carelessness," the neglect may be excusable. *Id.* at 388. Moreover, these cases reinforce the fact an equitable standard is used to determine excusable neglect. *See Midwest Emp'rs Cas. Co.*, 161 F.3d at 879. In light of the equitable nature of the test, and given the fact that the district court weighed the majority of the *Pioneer* factors in arriving at its conclusion on this issue, we cannot say that the district court's finding of excusable neglect was an abuse of discretion.

## B.    Evidentiary Decisions

### 1.    *Discovery Sanctions*

The district court struck as untimely exhibits "B" through "W" attached to Bennett's response in opposition to summary judgment because Bennett did not comply with disclosure requirements during the discovery process. Federal Rule of Civil Procedure 37 "empowers the district court to compel compliance with Federal discovery procedures through a broad choice of remedies and penalties." *Griffin v. Aluminum Co. of Am.*, 564 F.2d 1171, 1172 (5th Cir. 1977). For example, the district court may prohibit a party that fails to provide initial

disclosures from "us[ing] that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The district court is given broad discretion in formulating sanctions for a violation of its scheduling or pre-trial orders. *See Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996); *Geiserman v. MacDonald*, 893 F.2d 787, 790-91 (5th Cir. 1990). We have given the following guidance to district courts regarding sanctions for discovery violations:

> In exercising its discretion in considering the imposition of sanctions for discovery violations, a district court should consider the following factors: (1) the reasons why the disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances.

*United States v. Garza*, 448 F.3d 294, 299-300 (5th Cir. 2006). We review the district court's imposition of a discovery sanction for abuse of discretion. *See Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 397-98 (5th Cir. 2000). We will only reverse a discovery ruling in "unusual and exceptional cases." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 569 (5th Cir. 1996). This case is neither unusual nor exceptional, and we therefore allow the district court's discovery ruling to stand.

The record shows Bennett's total failure to comply with court orders at various stages of the litigation. During the discovery period, Bennett did not serve any of the initial disclosures required by Federal Rule of Civil Procedure 26, and did not respond to any of GEO's discovery requests. Bennett did not timely reply when GEO moved for summary judgment. Although the district court ordered Bennett to reply to the motion for summary judgment by a certain date, she replied two days after that date. When GEO moved to strike exhibits attached to Bennett's initially untimely response to summary judgment, Bennett

did not timely respond to GEO's motion. The district court *sua sponte* granted Bennett additional time, after the pre-trial conference, in which to respond to GEO's motion, yet Bennett still did not respond or request a continuance. Only after giving Bennett extra time to respond did the district court strike exhibits "B" through "W." We find Bennett's arguments as to why a lesser sanction should have been imposed, which rely on nonbinding and inapposite caselaw concerning dismissal of an action, unavailing. Accordingly, we find that the district court did not abuse its discretion in striking these exhibits.

### 2. *Summary Judgment Evidence*

The district court also struck certain portions of Bennett's affidavit, which was attached as an exhibit to her response in opposition to summary judgment. Specifically, the district court struck certain portions of Bennett's declaration that were conclusory, were hearsay, were based only on Bennett's subjective belief, contained legal arguments, or otherwise lacked a sufficient factual basis. The district court's decision to strike these portions was rooted in the basic summary judgment principle that "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). In addition, the district court struck statements based solely upon exhibits "B" through "W," reasoning that there would be no point in allowing evidence previously stricken by a discovery sanction to be revived by an affidavit. The district court "has broad discretion in its decisions to admit evidence. We will not disturb these rulings unless we find an abuse of discretion." *United States v. Torres*, 114 F.3d 520, 525-26 (5th Cir. 1997).

Bennett has failed to argue that the district court's decision to strike various statements in her affidavit was an abuse of discretion. We note that Bennett has not pointed to any error in the district court's decision to strike

portions of her declaration that contained hearsay or legal conclusions. She appears to take issue only with the striking of portions that make assertions based on evidence introduced in exhibits "B" through "W," which the district court previously struck with a discovery sanction. Based on our review of the record, we do not find that the district court abused its discretion in striking statements that it found conclusory, to be hearsay, or to contain legal statements. Nor do we find that the district court abused its discretion in striking statements based solely upon exhibits "B" through "W," since it had previously struck those exhibits. Because the district court did not abuse its discretion in striking Bennett's evidence, we view the record upon which the district court granted summary judgment as complete.

## C.    Summary Judgment

We review the grant of summary judgment de novo. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012). Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reed*, 701 F.3d at 438. We may "affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed*, 701 F.3d at 438 (citation and internal quotation marks omitted).

The district court granted summary judgment for GEO based principally on its finding that there was insufficient record evidence to create a genuine issue of material fact with respect to all of Bennett's claims. We agree. In addition, we find Bennett's arguments on appeal unavailing. Bennett argues that the district court erred in granting summary judgment for GEO because there were "contradictions of material facts [sic]." Bennett also alleges that the district court's understanding of the facts of the case is "contradicted by the record," and that the district court made improper "credibility choices" as to the evidence. In sum, Bennett appears to argue that summary judgment was

No. 12-60017

inappropriate because the evidence the district court struck from the record conflicts with the record evidence upon which the district court properly relied in its judgment. As we have determined that the district court's evidentiary decisions were proper, and because Bennett does not appear to challenge the grant of summary judgment on grounds other than the propriety of these evidentiary decisions, we find that the district court did not err in granting summary judgment for GEO.

## III. CONCLUSION

For the reasons provided, we AFFIRM the district court's judgment.