# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 14, 2021

Lyle W. Cayce
Clerk

No. 20-20319

L.A. Public Insurance Adjusters, Incorporated,

*Plaintiff—Appellee*,

*versus*

Timothy John Nelson,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-950

Before Owen, *Chief Judge*, and Jolly and Dennis, *Circuit Judges*.
James L. Dennis, *Circuit Judge*:*

Timothy John Nelson worked for L.A. Public Insurance Adjusters, Inc. ("LAPIA") as a public insurance adjuster. After their business relationship soured as a result of a dispute over the amount of commissions Nelson was owed, LAPIA terminated Nelson's employment and filed suit

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

against him in state court.  Nelson counterclaimed, seeking to recover the unpaid commissions, and then removed the case to federal court.

For nearly two years, LAPIA failed to file an answer to Nelson's counterclaims, only finally seeking leave to file the document after the parties had fully briefed cross summary judgment motions.  The district court accepted LAPIA's answer without explanation, then granted the company summary judgment based on a new defense theory that had been raised for the first time in LAPIA's belated answer.  Because LAPIA failed to demonstrate that its failure to initially file an answer was the product of "excusable neglect" as is required to obtain an extension of time once a filing period has elapsed under the Federal Rules of Civil Procedure, we REVERSE the district court's grant of summary judgment to LAPIA and its denial of Nelson's motion for partial summary judgment and REMAND this case for further proceedings.

## I.  Facts and Procedural History

LAPIA entered into a contract with Nelson to employ him as a public insurance adjuster, a professional who handles claims made with insurance companies on behalf of policy holders.  Nelson began working for LAPIA on November 18, 2017, but after a dispute arose over the amount of the commissions Nelson was due, the company terminated his employment only 79 days later on February 5, 2018.

LAPIA then filed suit against Nelson in Texas state court, seeking damages for disparaging comments Nelson allegedly made about the company while soliciting his former clients, as well as an injunction enforcing a non-compete clause in Nelson's employment contract.  On March 26, 2018, Nelson filed an answer in the state court and asserted counterclaims against LAPIA and LAPIA's owner Eric Ramirez for the unpaid commissions

No. 20-20319

Nelson was allegedly owed.[1]  The same day, Nelson removed the suit to the United States District Court for the Southern District of Texas based on the federal court's diversity jurisdiction.

LAPIA did not file an answer to Nelson's counterclaim within the time specified by Federal Rule of Civil Procedure 81(c)(2),[2] a fact that the district court orally noted during a February 9, 2019 hearing at which Ramirez was present when the court stated that Nelson could move for a default judgment based on LAPIA's failure to answer.  Without first attempting to file a belated answer, LAPIA moved for partial summary judgment on Nelson's counterclaim on June 14, 2019, contending that Nelson was not owed any commissions because he had failed to obtain the proper Texas state licensing to work as a public adjuster.

Nelson responded on July 5, 2019, and cross-moved for partial summary judgment.  Nelson argued that, under Federal Rule of Civil

---

[1] Nelson later voluntarily dismissed his counterclaim against Ramierz, LAPIA voluntarily dismissed its claims against Nelson, and only Nelson's counterclaim against LAPIA is at issue in this appeal.

[2] Federal Rule of Civil Procedure 81(c)(2) states as follows:

*(2) Further Pleading.*  After removal, repleading is unnecessary unless the court orders it. A defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest of these periods:

> (A) 21 days after receiving--through service or otherwise--a copy of the initial pleading stating the claim for relief;

> (B) 21 days after being served with the summons for an initial pleading on file at the time of service; or

> (C) 7 days after the notice of removal is filed.

No. 20-20319

Procedure 8(b)(6),[3] because LAPIA had not filed an answer denying the allegations that were contained in his counter-complaint, the company must be deemed to have admitted to all of them except those relating to the amount of damages. LAPIA in turn responded that Nelson had originally filed his counterclaims in Texas state court, and under Texas Rule of Civil Procedure 92,[4] the company was not required to file an answer and was considered to have generally denied all of Nelson's allegations.

While the summary judgment cross-motions remained pending, LAPIA's attorney moved for and was granted leave to withdraw, and LAPIA retained new counsel. Then, on January 12, 2020—approximately 22 months after Nelson had filed his counterclaims and six months after Nelson had moved for partial summary judgment based on LAPIA's failure to answer—LAPIA moved for leave to finally file an original answer to Nelson's counterclaims. Seemingly acknowledging acknowledged that its prior counsel had been mistaken about there being no need for the company to file an answer to Nelson's counterclaims. LAPIA asserted that it had been "at the total mercy of" its prior attorneys, who had not informed the company that no answer had been filed, and stated that its new attorney had sought to rectify the situation as soon as he became aware of the omission. Arguing that it should not be punished for the conduct of its former counsel, LAPIA asked that it be permitted to file an answer out-of-time pursuant to Federal

---

[3] Federal Rule of Civil Procedure 8(b)(6) provides as follows: ***(6) Effect of Failing to Deny.*** An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided."

[4] Texas Rule of Civil Procedure 92 provides, in relevant part, "When a counterclaim or cross-claim is served upon a party who has made an appearance in the action, the party so served, in the absence of a responsive pleading, shall be deemed to have pleaded a general denial of the counterclaim or cross-claim."

Rule of Civil Procedure 6(b)(1)(B),[5] which permits an extension of the time limits contained in the Federal Rules if a deadline was not met because of "excusable neglect." Although LAPIA claimed in its motion that the company was "not adding or changing any theory of liability," the proposed answer that was attached to the motion contained a new defense that the company had not raised in its previous summary judgment filings: that Nelson was not entitled to commissions because he had not yet completed a three-month probationary hiring period at the time of his termination.

On March 23, 2020, the district court seemingly granted LAPIA's motion for leave to file an answer out-of-time, stating in a "management order" that "[t]he answer of L.A. Public Insurance Adjusters, Inc., is accepted" without further explanation. One week later, LAPIA filed a second summary judgment motion, this time pressing its new theory that Nelson was not entitled to commissions because had only been "tentatively hired . . . as a probationary employee." The district court soon after denied Nelson's summary judgment motion and granted summary judgment to LAPIA, reasoning that "[d]uring the three-month probation, the company had the right" under the terms of Nelson's employment contract "to terminate him without notice or compensation other than wages." Because the district court determined that commissions did not qualify as "wages"

---

[5] Federal Rule of Civil Procedure 6(b)(1) states as follows:

**(b) Extending Time.**

*(1) In General.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:

. . . .

(B) on motion made after the time has expired if the party failed to act because of excusable neglect.

under the contract, the court ruled that Nelson would take nothing on his claim against LAPIA.  Nelson timely appealed.

## II. Standard of Review

We review a district court's grant or denial of an extension of time under Federal Rule of Civil Procedure 6(b) for an abuse of discretion. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).  By contrast, we review a district court's summary judgment ruling *de novo*, applying the same standard as the district court.  *United States v. Caremark, Inc.*, 634 F.3d 808, 814 (5th Cir. 2011).

## III.    Analysis

With some exceptions that are not pertinent to this case, Federal Rule of Civil Procedure 6(b) permits a district court to extend the various timelines set forth in the Federal Rules of Civil Procedure.  If done prior to the expiration of the time limit at issue, a court may extend the period for any reason, upon a party's motion or even on its own initiative.  FED. R. CIV. P. 6(b)(1)(A).  However, once a time limit has run, it may be extended only upon a party's motion and only if the court finds that "the party failed to act because of excusable neglect."  FED. R. CIV. P. 6(b)(1)(B).

Federal Rule of Civil Procedure 81(c) clarifies several applications of the Federal Rules in an action that has been removed to federal court from state court.  Rule 81(c)(2) specifically provides the timeline for a party's filing an answer or similar document asserting its defenses if it did not already do so in state court prior to removal.  It states that an answer or its equivalent must be filed within either 21 days of the party's receiving a copy of a pleading by any method, 21 days of the party's being served, or 7 days after the notice of removal was filed, whichever is latest.  FED. R. CIV. P. 81(c)(2)(A)-(C).

It is undisputed that LAPIA did not file an answer or its equivalent within the required period.[6] Thus, under Rule 6(b)(1)(B), the district court was permitted to accept LAPIA's untimely answer only if the court found that the company's failure to comply with the deadline was the result of "excusable neglect."

In *Pioneer Investment Services Co. v. Brunswick Assocs. LP*, 507 U.S. 380, 382 (1993), the Supreme Court examined the concept of "excusable neglect" while interpreting Federal Rule of Bankruptcy Procedure 9006(b)(1), which was modeled after and is substantially identical to Federal Rule of Civil Procedure 6(b)(1).[7] The Court rejected the notion that the Rule permitted a late filing only when circumstances beyond a party's control prevented filing before the deadline, stating that the ordinary meaning of neglect "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* at 388. But the Court indicated that not all careless omissions would qualify; "[b]ecause Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,'" the Court explained, "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. These include but are not limited to "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the

---

[6] LAPIA does not now argue that its former counsel's understanding of the law was correct—that is, that because the company was not required to file an answer to Nelson's counterclaim in state court under Texas Rule of Civil Procedure 92, Federal Rule of Civil Procedure 81(c)(2) did not require it to file an answer in federal court after the case was removed.

[7] The nation's circuit courts have "uniform[ly] . . . extend[ed] *Pioneer* beyond the context of bankruptcy," *United States v. Clark*, 51 F.3d 42, 44 (5th Cir. 1995) (collecting cases), and our court has applied the analysis specifically to a Rule 6(b) motion, *see Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 161 n. 8 (5th Cir. 2006).

delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

As an initial matter, LAPIA argued below that the company was not informed by its former counsel that no answer had been filed and should not be penalized for its former attorneys' mistake. But the *Pioneer* Court explicitly disclaimed the supposition that a client's ill-advised reliance on its counsel may be a justification for a late filing. *Id.* at 396. The party "voluntarily chose [his] attorney as his representative in the action," the Court reasoned, "and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Id.* at 397 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962)). "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Id.* (quoting *Link*, 370 U.S. at 634). "Consequently, in determining whether" a party's failure to meet a deadline "was excusable, the proper focus is upon whether the neglect of [the party] *and their counsel* was excusable."[8] *Id.* (emphasis in original).

We thus must consider whether LAPIA's former counsel's mistaken belief that no answer was required constitutes excusable neglect. Our court has held that, in most cases, an attorney's simple misunderstanding of the Federal Rules "weighs heavily against a finding of excusable neglect." *Midwest Emps. Cas. Co. v. Williams*, 161 F.3d 877, 880 (5th Cir. 1998) (quoting *Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 470 (5th Cir. 1998)), a determination that coincides with the rulings of many of our sister circuits,

---

[8] A party who is prejudiced by its counsel's inexcusable negligence is of course free to separately pursue whatever remedies are available to a client for an attorney's deficient representation.

*see Halicki*, 151 F.3d at 470 n.5 (collecting cases). Our court has "left open the possibility that some misinterpretations of the federal rules may qualify as excusable neglect," but we have emphasized that "such is the rare case indeed." *Id.* at 470; *Williams*, 161 F.3d at 880. We have therefore held that a district court abused its discretion by granting an extension of time based on an attorney's misreading of a time-limit set by the Federal Rules even when the district court had found that the intricacies of the Rule at issue were "a trap for the unwary." *Williams*, 161 F.3d at 880.

To be sure, the interaction of Texas Rule of Civil Procedure 92 and Federal Rule of Civil Procedure 81(c)(2) is more complex than many applications of the Federal Rules, potentially implicating a conflict between state and federal procedure. But even if we were inclined to excuse LAPIA's overlooking Rule 81(c)(2)'s directive that "[a] defendant who did not answer before removal must answer or present other defenses or objections under these rules," the totality of the circumstances would not justify permitting the late filing in this case.

Most significantly, the answer that LAPIA eventually filed was unfairly prejudicial to Nelson and greatly impacted the course of the proceedings. Prior to its belated answer, LAPIA never sought to assert the probationary-period defense; the company's original summary judgment motion instead argued that Nelson was not entitled to commissions because he was not properly licensed. By permitting LAPIA to file its answer out-of-time, the district court allowed the company to pull an abrupt about-face nearly two years after its answer was originally due, inserting a new surprise defense into the proceeding that not only had not, but also *could* not have been previously raised.

This is because, in arguing that Nelson was not entitled to commissions because he had not completed the probationary employment

period, LAPIA denies that Nelson satisfied a condition precedent to LAPIA's performance under the contract. *See Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) ("A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." (quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992))). Under Federal Rule of Civil Procedure 9(c),[9] a party claiming the nonoccurrence of a condition precedent must specifically deny the occurrence in its initial pleadings, setting forth the allegation with particularity. And a party who does not deny the occurrence of a condition precedent in a responsive pleading may not later rely on such a theory, including at the summary judgment stage. *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 331–32 (5th Cir. 2012).

Consequently, even if LAPIA's original counsel had been correct about the interaction of Texas Rule of Civil Procedure 92 and Federal Rule of Civil Procedure 81(c)(2) and LAPIA had not been required to file an answer, the company would not have been able to raise the probationary-employment-period defense as a ground for or defense against summary judgment. Texas Rule of Civil Procedure 92 provides that a party who has already entered an appearance in the case and against whom a counterclaim is asserted is "deemed to have pleaded a general denial of the counterclaim" if they do not file a responsive pleading. And "a general denial that all conditions precedent ha[ve] been satisfied . . . is insufficient" to raise the nonoccurrence of a condition precedent under Rule 9(c). *Serv. Temps Inc.*, 679 F.3d at 331 (citing *Trinity Carton Co. v. Falstaff Brewing Corp.*, 767 F.2d

---

[9] In full, Federal Rule of Civil Procedure 9(c) states: "**Conditions Precedent.** In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity."

184, 192 (5th Cir. 1985)). It was only the district court's allowance of a wholly new answer—filed years into the life of the case and after the parties had fully briefed cross-summary judgment motions based on wholly different issues—that permitted LAPIA to assert this alternative defense theory in a *second* summary judgment motion.

Nor does the length of LAPIA's delay in seeking leave to file an answer weigh in favor of finding excusable neglect on the part of the company. Though LAPIA asserts that it was unaware that no answer had been filed on its behalf, the company's claimed ignorance is belied by the fact that, nearly a year before the company requested leave to file an answer, the company's owner was present at a hearing when the district court specifically noted that Nelson could move for a default judgment on the ground that LAPIA had failed to file the document as required. And more fundamentally, as related above, the Supreme Court has stated that in "our system of representative litigation, . . .each party . . . is considered to have notice of all facts, notice of which can be charged upon the attorney." *Pioneer,* 507 U.S. at 397 *(quoting Link*, 370 U.S. at 634); *see also Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287 (5th Cir. 1985) ("This Court has pointedly announced that a party has a duty of diligence to inquire about the status of a case . . . .").

LAPIA must be deemed to have been aware of the nonfiling by the February 9, 2019 hearing at the latest, but, rather than seeking to rectify the issue immediately, the company steadfastly maintained it was not required to file an answer. It was not until January 12, 2020—nearly two years after the answer was originally due, nearly a year after LAPIA's failure to answer was recognized by the district court, six months after Nelson moved for partial summary judgment on the ground that no answer had been filed, and five-and-a-half months after LAPIA responded arguing that no answer was needed—that LAPIA finally conceded its mistake and sought to correct it. As we have said, the excusable neglect inquiry "is at bottom an equitable

one," *Pioneer*, 507 U.S. at 395, and "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984).

In sum, the totality of the circumstances here weighs heavily against a finding that LAPIA's failure to file a timely answer was the product of excusable neglect. It is not clear from the district court's sparse order that the court even found excusable neglect, but we have little trouble determining that it clearly erred if it did so. And, because excusable neglect is a prerequisite for an extension of time under Rule 6(b)(1)(B), the district court abused its discretion by granting LAPIA leave to file its answer out-of-time. *See Williams*, 161 F.3d at 880.

In the absence of an answer denying the allegations in Nelson's counter-complaint, LAPIA must be deemed to have admitted those allegations that are unrelated to damages. *See* Fed. R. Civ. P. 8(b)(6). And, as stated, LAPIA was not permitted to rely on its probationary-employment-period defense, a denial of a condition precedent, without specifically pleading it in response to Nelson's counter-complaint. *See Serv. Temps Inc.*, 679 F.3d at 331-32. Accordingly, the district court also erred by granting LAPIA's summary judgment motion and denying Nelson's motion for partial summary judgment.

\* \* \*

Based on the foregoing, we REVERSE the district court's grant of summary judgment to LAPIA and denial of Nelson's motion for partial summary judgment and REMAND this case for further proceedings consistent with this opinion.

No. 20-20319

PRISCILLA R. OWEN, *Chief Judge*, dissenting:

With respect, I dissent. The district court did not abuse its considerable discretion in concluding that excusable neglect was the cause of counsel's failure to file an answer to the counterclaim. The counterclaim was originally filed in state court, and no answer was required under state procedural rules.[1] After the case was removed, L.A. Public Insurance failed to file an answer to the counterclaim in federal court. When the district court permitted L.A. Public to file an answer after the deadline for doing so had passed, discovery was ongoing. The defense raised in that answer was based on contractual provisions that were plain and straightforward. Those contractual provisions stated that probationary employees were to be paid only wages for hours completed. Nelson was still in the three-month probationary period specified in his contract when his employment was terminated, 79 days after he was hired. His counterclaim sued for commissions, to which he was not entitled under his contract. These facts were not in dispute, and the district court rendered judgment in favor of L.A. Public. I would affirm the district court's judgment.

---

[1] TEX. R. CIV. P. 92.

13